**FILED**

**JUN 28 2016**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

**LISA J. WILSON,**

       Plaintiff

VS.

Defendants

Equifax Information Services, LLC.
1558 Peachtree Street NE
Atlanta, Georgia 30309

JAMES DUFF,
In his official capacity as Director of the AO
Administrative Office of the United States Courts
One Columbus Circle, NE, Washington, DC 20544

BRIAN STACY MILLER,
In his official capacity as Chief Judge for the Eastern District of Arkansas
Richard Sheppard Arnold
United States Courthouse
500 West Capitol Avenue
Little Rock, Arkansas 72201

G. EDWARD TOWE
In his official capacity as Chief U.S. Probation Officer for the Eastern District of Arkansas
Richard Sheppard Arnold
United States Courthouse
500 West Capitol Avenue
Little Rock, Arkansas 72201

**JURY TRIAL DEMANDED**

**CIVIL ACTION**

Case: 1:16-cv-01345
Assigned To : Jackson, Amy Berman
Assign. Date : 6/28/2016
Description: Pro Se Gen. Civil

REBECCA HOWELL,
In her official capacity as Deputy Chief U.S. Probation for the Eastern District of Arkansas
101 Gerald R Ford Federal Building
110 Michigan NW
Grand Rapids MI 49503

HALLIE YATES,
In her official capacity as Administrative Mgr. for U.S. Probation in the Eastern District of Arkansas
Richard Sheppard Arnold
United States Courthouse
500 West Capitol Avenue
Little Rock, Arkansas 72201


LEANNE ELLIOTT,
In her official capacity as Probation Services Asst. for U.S. Probation in the Eastern District of Arkansas
Richard Sheppard Arnold
United States Courthouse
500 West Capitol Avenue
Little Rock, Arkansas 72201

ANTHONY GUERRA,
In his official capacity as a Supervisory Probation Officer for the Eastern District of Arkansas
Richard Sheppard Arnold
United States Courthouse
500 West Capitol Avenue
Little Rock, Arkansas 72201

# COMPLAINT
## PRELIMINARY STATEMENT

Plaintiff Lisa J. Wilson (hereinafter known as Plaintiff) brings this complaint against the Defendant's for the willful and negligent violation of the Fair Credit Reporting Act (hereinafter known as FCRA). Specifically, Plaintiff challenges the Defendant's failure to obtain written consent and as directed by FCRA and failure to provide pre-adverse action notices required under FCRA--including a copy of the consumer report relied upon and a summary of the FCRA rights---prior to taking any adverse action based in whole or in part on the information obtained through the procurement of such consumer reports. Plaintiff alleges as follows upon personal knowledge as to herself and own acts and experiences as to all matters upon information and belief.

## NATURE OF THE CASE

1. The Fair Credit Reporting Act1 ("FCRA") governs the collection, assembly, and use of consumer report information and provides the framework for the credit reporting system in the United States. The FCRA was enacted in 1970, and it has been amended several times in the ensuing years. The two most extensive amendments were the Consumer Credit Reporting Reform Act of 1996 (the "1996 amendments")2 and the Fair and Accurate Credit Transactions Act of 2003 ("FACT Act").

2. Section 604(a)(3)(B) lists "employment purposes" as a permissible purpose. Section 603(h) defines "employment purposes" to include "promotion, reassignment or retention," as well as to evaluate a job applicant. Accordingly, a report provided by a consumer reporting agencies (hereinafter known as CRAs) that is used or is expected to be used or collected in whole or in part in connection with these purposes is a consumer report.

3. The FCRA regulates the practices of CRAs that collect and compile consumer information into consumer reports for use by credit grantors, insurance companies, employers, landlords, and other entities in making eligibility decisions affecting consumers. Information included in consumer reports generally may include consumers' credit history and payment patterns, as well as demographic and identifying information4 and public record information (e.g., arrests, judgments, and bankruptcies). Consumer report information may be used by entities to predict the risk of future nonpayment, default, or other adverse events. The FCRA was enacted to (1)

3

prevent the misuse of sensitive consumer information by limiting recipients to those who have a legitimate need for it; (2) improve the accuracy and integrity of consumer reports; and (3) promote the efficiency of the nation's banking and consumer credit systems. To that end, employers who seek and obtain and use consumer reports regarding their applicants and employees are required to provide express disclosures and a summary of rights prior to taking any adverse employment action against the applicants and employees based on information contained in the reports.

4. The FCRA imposes a number of duties on "consumer reporting agencies." They must have permissible purposes to furnish consumer reports (section 604), take certain actions relating to identity theft (sections 605A, 605B), avoid furnishing obsolete adverse information in certain consumer reports (sections 605, 607(a)), adopt reasonable procedures to assure privacy (sections 604, 607(a)) and accuracy (section 607(b)) of consumer reports, provide only limited disclosures to governmental agencies (section 608) except in cases involving counterintelligence and counterterrorism (sections 625-626), provide consumers certain disclosures upon request (sections 609 and 610) at no cost or for a reasonable charge (section 612), follow certain procedures if a consumer disputes the completeness or accuracy of any item of information contained in his file (section 611), and follow certain procedures in reporting public record information for employment purposes or when reporting adverse information other than public record information in investigative consumer reports (sections 613, 614). CRAs that resell consumer reports procured from other CRAs have additional obligations (section 607(e))

5. A "consumer report" includes more than just consumer credit information. When CRAs provide information to employers regarding consumers' driving records, employment records, criminal histories, education, and licenses held by job applicants or current employees, they are providing "consumer reports" because the data involves the individual consumer's "character, general reputation, personal characteristics, or mode of living."

6. The term "employment purposes" is used as part of the definition of "consumer reports" (section 603(d)) and as a permissible purpose for the furnishing of consumer reports (section 604(a)(3)(B)). When an employer procures reports for employment purposes, it must make certain certifications and disclosures, and obtain consumer consent. (See section 604(b). When a CRA furnishes public record information in reports "for employment purposes," it must provide notice to the consumer or maintain strict procedures for keeping the information up to date. (See section 613.)

7. Here, the Defendants have willfully violated the FCRA by procuring the Plaintiffs consumer report and failing to obtain consent, provide a timely copy of the report, and a summary of her FCRA rights before taking adverse action.

8. In sort, in violation of the FCRA, the Defendants failed to provide the Plaintiff with a timely copy of the consumer report it procured together with a description of her rights under FCRA before taking adverse employment action, where the adverse action was based in whole or in part on the consumer report. *See* 15 U.S.C. § 1681b(b)(3).

9. As a result of the Defendants willful violations of FCRA, the Plaintiff has been deprived of rights guaranteed by federal law and is thus entitled to statutory damages of at least $100 and not more than $1,000 for each violation. *See* 15 U.S.C. § 1681n(a)(1)(A).

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction 28 U.S.C. § 1331 because this action arises under the Fair Credit Reporting Act, 15 U.S.C. §1681 *et. seq.*, which is a federal statute.

11. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b) and (e).

## **FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**

12. At all times pertinent hereto, Defendants were acting by and through their agents, servants and/or employees, who were acting within the scope and course of their employment, and under the direct supervision and control of the Defendants herein.

13. At all times pertinent hereto, the conduct of Defendants as well as their agents, servants and/or employees, was malicious, intentional, willful, reckless, negligent and in wanton disregard for federal and state law and the rights of the Plaintiff herein.

14. Plaintiff was formerly employed by the United States Probation and Pretrial Office, Little Rock, Arkansas.

15. Plaintiff held the position of United States Probation Officer.

16. In the position of United States Probation Officer, the Plaintiff was required to obtain a Single Scope Background Investigation (SSBI). The SSBI is conducted to determine whether a security clearance will be approved for an individual. This investigation is extremely comprehensive. Field interviews are standard procedure covering family, friends, employers, co-workers, prior instructors or teachers from educational institutions the individual attended, neighbors, and any and all persons that may be deemed to have important knowledge of the individual. Another aspect of SSBI is a thorough check and review of an individual's pertinent history including public records, previous employment, cases, financial background checks, court cases, criminal history, and any potential data that may be significant in determining the viability of approving a security clearance. It may include a National Agency Check with local Agency Check (NACLC) and credit background checks on not just the individual himself/herself but also their spouse, cohabiting partner, and immediate family. An SSBI is mandatory for approving Top Secret, SCI, and Q access. Plaintiff has submitted to background investigations in 2007 and 2010. In both instances, the background investigations were completed by the Office of Personnel Management, Federal Investigative Services (OPM-FIS). U.S. Probation officers must undergo 5-year reinvestigations.

17. Starting December 31, 2013, to March 2014, the Plaintiff was on maternity leave under the authority of the Family Medical Leave Act, expressly approved by Defendant G. Edward Towe. Prior to separating for the leave period, the Plaintiff surrendered all Government-issued electronic devices to the Information Technology Department, namely, Christopher Kindle, for safekeeping due to impending out-of-state travel post-delivery for the purpose of obtaining family support. Plaintiff remained available to the Probation Office via cellular telephone and U.S. Mail, which was forwarded to the out-of-state residence for the leave period. Defendant Anthony Guerra spoke briefly with the Plaintiff during the post-delivery hospitalization. Defendant Hallie Yates communicated with the Plaintiff via U.S. Mail and electronic messaging concerning a previously declared return-to-work date in January, February, and March. Health Care Providers are mandated to provide medical facts related to serious health conditions, namely, the probable duration of the condition, in advance of approval being granted by agency administrators.

18. In May 2014, Defendant Hallie Yates made contact with the Plaintiff via a priority email urging written acknowledgment of a 2012 Local Code of Conduct Policy. The Plaintiff was bogged down with other duties and admittedly did not read the 2012 Local Code of Conduct Policy but signed in acknowledgement for same and returned it to Defendant Yates in response to the priority email. Approximately two hours later, Defendant Anthony Guerra summoned the Plaintiff to his office and stated that a recently obtained credit report revealed a bankruptcy filing and ordered a written explanation as to the nature of the filing. The Plaintiff asked Defendant Guerra to identify the individual who accessed the credit report to which he responded, "I don't know, they won't tell me." The Plaintiff inquired if the direct order was in relationship to an investigation and Defendant Guerra was unable to provide a response confirming or denying same. The Plaintiff initiated contact with Defendant Yates in an effort to determine who accessed the report and was told, "A copy of the form was left in your box and you and P.W. were the only ones out at the time." The Plaintiff advised Defendant Yates that unknown personnel assumed responsibility for all internal and external mail during the FMLA period and as a result, the assigned mailbox was void of physical mail upon return to the Probation Office in March 2014. Defendant Yates responded by providing a copy of the credit report accessed during the plaintiff's absence. At that time or all subsequent days, the Plaintiff was not provided a "Summary of Your Rights Under the Fair Credit Reporting Act."

19. On May 27, 2014, Defendant Rebecca Howell issued the Plaintiff a Letter of Reprimand (LOR) articulating the Plaintiff was advised by Defendant Yates on January 22 and 27, 2014, to sign the Code of Conduct Acknowledgement Form. Further, on May 14, 2014, the plaintiff's credit report reflected an undisclosed bankruptcy filing. The LOR contained inflammatory and questionable language, such as; the Plaintiff's actions did not reflect high standards of conduct or adherence to professional standards since personal financial investigations are a suitability factor in personnel security investigations.

20. In response to the date referenced by Defendant Howell, he Plaintiff reviewed the credit report which indicated that on February 22, 2014, Defendant Leanne Elliott accessed the report electronically. Shortly thereafter, the plaintiff established telephonic contact with an Equifax representative who confirmed the United States Probation Office accessed the report on February 22, 2014, with no subsequent inquiries.

21. The Plaintiff submitted a rebuttal to the LOR to Defendant Towe, who later revised the LOR and reissued same on June 16, 2014, subsequent to Defendant Howell's separation from the Eastern District of Arkansas. The Plaintiff noted in the rebuttal that financial information had never been withheld intentionally or unintentionally from a federal background investigation. It was noted the Plaintiff was not the subject of a federal background investigation in or about January 2014. In addition to the revisions, Chief Towe suggested the Plaintiff pursue a grievance through the local Adverse Action Plan or the Eastern District of Arkansas Equal Employment Opportunity and Employment Dispute Resolution Plan. The Plaintiff did so resulting in an unprecedented campaign of harassment and retaliation by Defendant Guerra authorized and orchestrated by Defendant Towe. The harassment resulted in privacy violations, the lodging of false allegations, a negative performance rating, and a loss in with-in-grade increase. In each instance, the Plaintiff's credit report was specifically referred to and documented internally.

22. The Plaintiff's rebuttal also included proof the electronic devices were surrendered prior to the approved maternity leave resulting in a total lack of ability to receive emails from the Probation Office. Neither Defendant Towe nor Defendant Howell responded to the Plaintiff's rebuttal to the January notifications.

23. In June 2014, the Plaintiff sought relief from the harassment and retaliation from the Defendant Miller, who failed to acknowledge receipt of a hand-delivered letter or respond to same. A few weeks later, the Plaintiff forwarded a written complaint (via facsimile) to the Office of the Director of the Administrative Courts, pursuant to the Waste, Fraud, and Abuse policy. The Plaintiff called to confirm receipt of same and received verbal acknowledgement of same. To date, the Plaintiff has not received a response to the written complaint. Plaintiff subsequently filed a formal complaint with the Consumer Financial Protection Bureau concerning the FCRA violation.

24. Due to the intolerable working conditions comprised of numerous privacy violations, harassment, retaliation and false allegations, the Plaintiff later participated in a mandatory Mediation with Defendant Towe and his privately retained counsel. The Mediation was coordinated by the Clerk of the Bankruptcy Court. The Mediation was facilitated by a high-ranking federal court employee, who was paid and provided travel accommodations by Defendant Towe. Employees in the Excepted Service do not have access to the protections granted to federal employees in the competitive service resulting in an unequivocal imbalance of power with regard to labor relations.

25. Defendant Towe opened the Mediation by characterizing the complaint as unfounded. Defendant Towe and his attorney presented in a hostile manner, which was interpreted as intimidation. During the Mediation, the Plaintiff observed the privately retained attorney reviewing her confidential Office of Personnel Management Form 630 and other unrelated personnel records in complete disbelief. At that moment, the Plaintiff elected to voluntary separate via a Settlement Agreement (constructive discharge) for the preservation of her multi-year federal career. Defendant Towe has since unrepentantly violated the terms and conditions of the Settlement Agreement. Plaintiff has communicated all violations to Defendant Miller via email and Certified U.S. Mail. To date, Defendant Miller has failed to respond to the Plaintiff or investigate the allegations.

26. Defendants knew or should have known that their actions violated the FCRA. Additionally, Defendants could have taken the steps necessary to bring their agent's actions within compliance of these statutes, but neglected to do so and failed to adequately review those actions to insure compliance with said laws.

## PARTIES

27. Plaintiff, Lisa J. Wilson, is a natural person and a citizen of the State of Iowa. She resides in Clinton, Iowa.

28. Defendant Equifax, Inc. ("Equifax") is a corporation incorporated in and existing under the laws of the State of Georgia with its principal place of business located at 1550 Peachtree Street Northeast, Atlanta, Georgia. Equifax conducts business throughout the United States and the District of Columbia. Equifax is a consumer reporting agency that regularly engages in the practice of assembling or evaluating, and maintaining, for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity.

29. Defendant James Duff is the current Director of the Administrative Office, which was established by Congress in 1939 to provide administrative support to federal courts. Mr. Duff id duly appointed and acting official charged with the administration of the laws and implementing regulations, instructions and directives affecting the Administrative Office of the Courts. All responsibility for the administrative Office of the U.S. Courts is vested in the Director, who is the chief administrative officer for the federal courts. Under his direction, the agency carries out a vast variety of functions, such as, advisory duties and responsibilities, monitoring of the fair employment practices program, and processing of Waste, Fraud, and Abuse claims.

30. Defendant Brian Stacy Miller is the Chief Judge for the Eastern District of Arkansas. Judge Miller maintains the authority to appoint chief and other probation officers (18 U.S.C. § 3602). Judge Miller is charged with overseeing court management by setting priorities and standards, establishing procedures for planning and decision making, fostering communication, and keeping informed of key actions and issues. Chief Judges are tasked with supervising the clerk of court and chief probation and pretrial officers (including conducting annual performance evaluations),

reviewing official adverse personnel actions taken by managers against court employees, and resolving informal disputes that officers cannot resolve.

31. Defendant G. Edward Towe is the Chief U. S. Probation Officer for the Eastern District of Arkansas who routinely obtains and uses information in consumer reports to conduct background checks on defendants, offenders, prospective employees, and current employees.

32. Defendant Rebecca Howell is the former Deputy Chief U.S. Probation Officer for the Eastern District of Arkansas, who routinely obtained and used information in consumer reports to conduct background checks on defendants, offenders, prospective employees, and current employees.

33. Defendant Hallie Yates is the Administrative Manager for the U.S. Probation Officer in the Eastern District of Arkansas, who routinely performs duties and responsibilities consistent with a Human Resources Officer.

34. Defendant Leanne Elliott is a Probation Services Assistant, who routinely performs administrative/clerical duties in support of Probation Officers.

35. Defendant Anthony Guerra is a Supervisory U.S. Probation Officer for the Presentence Investigative Unit in the Eastern District of Arkansas.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Lisa J. Wilson, individually, prays for the following relief:

A. An order sealing the Plaintiff's personnel records maintained at the Probation Office and the Administrative Office of the Courts;
B. An award o statutory damages;
C. An injunction requiring the Defendant to provide proper disclosures and information as required under 15 U.S.C. § 1681b(b)(3);
D. An award of actual damages;
E. An award of punitive damages;
F. Costs and reasonable attorney's fees, pursuant to 15 U.S.C. §§ 1681n, 1681o;
G. Grant additional injunctive relief as the Court may deem just and proper;
H. Such other and further relief as may be necessary, just and proper

## DEMAND FOR JURY TRIAL

Plaintiff Lisa J. Wilson hereby demands a trial by jury for all issues so triable.

Respectfully submitted,

LISA J. WILSON

*[signature]*

Pro Se Litigant
419 21st. Place Court
Clinton, Iowa
52732
563-559-2044
Dated: May 13, 2016